IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| MICKEY SCHOLES,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>MARTIN O'MALLEY, Commissioner of<br>Social Security,<br><br>　　　　　Defendant. | Case No. 24-cv-00029-DKW-KJM<br><br>**ORDER VACATING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS[1]** |

Plaintiff Mickey Scholes appeals the April 18, 2023 denial of his application for supplemental security income, asserting that the Administrative Law Judge ("ALJ") erroneously: (1) excluded the four-hour standing/walking limitation included in his Residual Functional Capacity ("RFC") determination from his hypothetical question to the Vocational Expert ("VE"); and (2) failed to properly consider the supportability and consistency of various medical providers' opinions. Following careful review of the record below and the parties' submissions, the Court agrees in part. Specifically, although the ALJ erred by omitting the four-hour standing/walking limitation from the hypothetical question asked of the VE, such error was harmless, as this restriction was already encompassed within the definition of sedentary work considered by the VE. Nevertheless, remand is still

---

[1] Pursuant to Local Rule 7.1(c), the Court elects to decide this matter without a hearing.

necessary, as the ALJ did not properly discuss the consistency and supportability of the medical opinions Scholes identifies, thereby rendering it impossible for this Court to review whether the rejection of such opinions was supported by substantial evidence.  Accordingly, as more fully set forth below, the decision of the Commissioner of Social Security is VACATED and REMANDED for further administrative proceedings consistent with this Order.

## FACTUAL & PROCEDURAL BACKGROUND

### I.   Review of Disability Claims

The Commissioner of Social Security utilizes a five-step sequential process to evaluate whether an individual is disabled under the Social Security Act.  20 C.F.R. § 404.1520; 20 C.F.R § 416.920.  First, at Step One, the claimant must demonstrate that he is not currently engaged in any substantial, gainful activity.  *Id.* §§ 404.1520(a)(4)(i), (b); §§ 416.920(a)(4)(i), (b).  If he is, then he is not considered disabled, and the analysis ends.  *Id.*

At Step Two, the claimant must show that he has a severe physical or mental impairment, or combination of impairments, that significantly limits his ability to perform basic work activities.  *Id.* §§ 404.1520(a)(4)(ii), (c); §§ 416.920(a)(4)(ii), (c).  If he cannot do so, he is not considered disabled, and the inquiry ends.  *Id.*

At Step Three, the Commissioner must determine whether the claimant's impairment matches or is equivalent to an established impairment listed under the

governing regulations. *Id.* §§ 404.1520(a)(4)(iii), (d); §§ 416.920(a)(4)(iii), (d).  If it does, the claimant will be found disabled without regard to his age, education, or work experience. *Id.*  If it does not, the Commissioner must make a finding regarding the claimant's residual functional capacity ("RFC") to perform work and proceed to Step Four. *Id.* § 404.1520(e); § 416.920(e).

At Step Four, the Commissioner must consider whether the claimant has the RFC to perform any relevant work in which he previously engaged. *Id.* §§ 404.1520(a)(4)(iv), (e), (f); §§ 416.920(a)(4)(iv), (e), (f).  If so, the claimant is not considered disabled. *Id.* §§ 404.1520(a)(4)(iv), (f); §§ 416.920(a)(4)(iv), (f). If he does not, the evaluation proceeds to Step Five. *Id.* §§ 404.1520(a)(4)(v), (g)(1); §§ 416.920(a)(4)(v), (g)(1).

Finally, at Step Five, the burden shifts to the Commissioner to show that: (1) in light of the claimant's RFC, age, education, and work experience, he can perform other work; and (2) such other work is available in significant numbers in the national economy. *Id.* §§ 404.1520(a)(4)(v), (g)(1); § 404.1560(c); §§ 416.920(a)(4)(v), (g)(1); § 416.960(c); *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999) (explaining that the Commissioner bears the burden of proof at Step Five).  Should the Commissioner fail to meet this burden, the claimant will be deemed disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1); §§ 416.920(a)(4)(v), (g)(1); *Tackett*, 180 F.3d at 1099.

## II.   <u>The ALJ's Decision</u>

On April 18, 2023, the ALJ issued a decision finding Scholes "not disabled" for the purposes of supplemental security income from his application date of December 20, 2018 through the date of the decision.  Administrative Record ("AR") at 54.  At Step One of the disability evaluation process, the ALJ determined that Scholes had not engaged in substantial gainful activity since his application date.[2]  *Id.* at 42.  At Step Two, the ALJ determined that Scholes had the following severe impairments: cervical spine degenerative disc disease, fibromyalgia, obesity, depression, neurocognitive disorder, chronic pain syndrome, psychogenic seizures, and left knee injury by historical diagnosis.  *Id.*  Thereafter, at Step Three, the ALJ determined that these impairments—either separately or in combination—did not meet or medically equal the severity of one of the impairments listed in the governing regulations.  *Id.* at 43.  Accordingly, prior to moving on to Step Four, the ALJ determined that Scholes had the RFC to perform sedentary work with the following limitations:

> occasional climb ramps and stairs; occasional balance, stoop, crouch, crawl and kneel; no ropes, ladders or scaffolds; no high exposed places or moving mechanical parts; standing and walking limited to a total of 4 hours in an 8-hour workday; can understand, remember, and carry out simple instructions and make simple work-related decisions; can sustain an ordinary routine without special supervision; can tolerate

---

[2]Although the ALJ noted that Scholes had reported working as a bartender and pub manager for a friend after the application date, he treated it as only "an unsuccessful work attempt, as it did not exceed six months and ceased at least in part due to medical reasons."  AR at 42.

occasional changes in work setting; can work at a consistent pace throughout the workday, but not at a production rate pace where each task must be completed within a strict time deadline; can tolerate a low level of work pressure, defined as work not requiring multitasking, very detailed job tasks, significant independent judgment and a production rate pace; and no more than occasional exposure to vibration.

*Id.* at 44.

Given these limitations, at Step Four, the ALJ determined that Scholes was unable to perform any past relevant work as an electronics repair person. *Id.* at 52. Finally, at Step Five, the ALJ determined that in light of Scholes' RFC, age, education, and work experience, he could perform jobs existing in significant numbers in the national economy, including addresser, final assembler, and lens inserter. *Id.* at 53. Consequently, the ALJ determined that Scholes was not disabled from December 20, 2018 through the date of the decision. *Id.* at 54.

On November 16, 2023, the Appeals Council denied Scholes' request for review of the ALJ's decision, thus rendering it the final decision of the Commissioner of Social Security. *Id.* at 1.

## STANDARD OF REVIEW

When reviewing an ALJ's disability determination, the Court must uphold the decision "unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). Put differently, "[s]ubstantial

evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (quotation marks and citation omitted).  "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.*; *accord Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("[Courts] leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.").

Moreover, even if the ALJ errs, the decision must be upheld where the error is harmless—that is, where "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (quotation marks and citation omitted).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quotation marks and citation omitted), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).  When undertaking this review, the Court must "look at the record as a whole to determine whether the error alters the outcome of the case." *Id.* at 1115.

## DISCUSSION

In his Opening Brief, Dkt. No. 10, Scholes asserts that the ALJ erred by: (1) improperly excluding the four-hour standing/walking limitation in Scholes' RFC from the hypothetical question asked to the VE; and (2) failing to properly consider the consistency and supportability of Drs. Reed, Wang, Teruya, and Taylor's medical opinions.  The Court addresses each argument in turn.

## I.   Hypothetical Question to the Vocational Expert

First, Scholes asserts that the ALJ's decision lacked substantial evidentiary support as it was based, at least in part, on a hypothetical question to the VE which "did not take into account all of the limitations that the ALJ identified in the RFC finding." Dkt. No. 10 at 6.  Specifically, Scholes argues that in determining his RFC, the ALJ found him capable of sedentary work with, among other things, "standing and walking limited to a total of 4 hours in an 8-hour workday."  AR at 44.  In questioning the VE, however, the ALJ omitted the latter limitation, instead asking:

> So for the first hypothetical I would like you to assume a hypothetical individual of the Claimant's age and education with the past job that you described and further assume this individual would be limited to sedentary work with the additional limitations of occasional climbing of ramps and stairs; occasional balance, stoop, crouch, crawl and kneel; no ropes, ladders or scaffolds; no high exposed places or moving mechanical parts; can remember, understand and carry out simple instructions; make simple work-related decisions and sustain an ordinary routine without special supervision and can tolerate occasional changes in work setting; can work at a consistent pace throughout the

workday but not a production rate pace where each task must be completed within a strict time deadline and can tolerate a low level of work pressure, but finds work not requiring multitasking, very detailed job tasks; significant independent judgment; production rate pace and no more than occasional exposure to vibration. Can this hypothetical individual perform any past work? . . . Can this hypothetical individual perform any other work?

*Id.* at 78–79.  Scholes claims that this "material alter[ation]" constituted harmful error as "it cannot be known if Micky [sic] could perform any jobs with the altered limitation that the ALJ found him to have."  Dkt. No. 10 at 9–10.  As such, he seeks "[r]emand for VE testimony to determine if there are jobs Micky [sic] can perform."  *Id.* at 10.

Certainly, Scholes is correct that:

When the ALJ's question to a vocational expert <u>inaccurately</u> describes the claimant's true limitations, [the Ninth Circuit's] legal rule is clear: If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.  In that situation, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings.

*Leach v. Kijikazi*, 70 F.4th 1251, 1255 (9th Cir. 2023) (quotation marks and citations omitted).  Nevertheless, even under such circumstances, the Court may still affirm "if the ALJ's failure to include all of the claimant's limitations was harmless."  *Id.*  And, indeed, that is precisely the case here.  Although the ALJ may have failed to explicitly include the four-hour standing/walking limitation when describing Scholes' RFC to the VE, such omission was not material, as the ALJ

also asked the VE to assume that the individual in question would be limited to

*sedentary work*.  *See* AR at 78.  Such work, by definition, limits total standing or

walking to "no more than about *2 hours of an 8-hour workday*, and sitting should

generally total approximately 6 hours of an 8-hour workday."  Social Security

Ruling ("SSR") 83-10 (emphasis added).  Put differently, sedentary work

inherently includes a limitation on standing and walking which is *more restrictive*

than the limitation that the ALJ omitted from the hypothetical question.

Accordingly, as all of Scholes' limitations were properly conveyed to the VE, the

ALJ's error was harmless and does not provide a basis for remand.

## II.   <u>Medical Opinions</u>

Next, Scholes asserts that the ALJ improperly rejected the medical opinions

of Drs. Reed, Teruya, Wang, and Taylor without considering the supportability and

consistency of the same.  Dkt. No. 10 at 10–25.

Under the revised Social Security regulations, an ALJ may not "defer or give

any specific evidentiary weight, including controlling weight, to any medical

opinion(s) or prior administrative medical finding(s), including those from [the

claimant's] medical sources."[3]  20 C.F.R. § 404.1520c(a).  Rather, "the ALJ must

assess the persuasiveness of each medical opinion after considering specified

---

[3]The revised regulations govern claims which, as is the case here, were filed on or after March 27, 2017.  *See* 20 C.F.R. § 404.1520c; AR at 40.

factors." *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024).  These

include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4)

specialization; and (5) other factors, including but not limited to, "evidence

showing a medical source has familiarity with the other evidence in the claim or an

understanding of our disability program's policies and evidentiary requirements."

20 C.F.R. §§ 404.1520c(c)(1)–(5).

Of these factors, supportability and consistency are the most important.  20

C.F.R. §§ 404.1520c(a), (b)(2).  Supportability refers to "the extent to which a

medical source supports the medical opinion by explaining the 'relevant …

objective medical evidence,'" while "[c]onsistency means the extent to which a

medical opinion is 'consistent … with the evidence from other medical sources and

nonmedical sources in the claim.'"  *Woods v. Kijikazi*, 32 F.4th 785, 791–92 (9th

Cir. 2022) (quoting 20 C.F.R. §§ 404.1520c(c)(1)–(2)).  Accordingly, in assessing

the persuasiveness of any given medical opinion, the ALJ must not only consider,

but explain how they considered, supportability and consistency "in sufficient

detail to allow a reviewing court to determine whether that reasoning is free of

legal error and supported by substantial evidence."[4]  *Howard v. Kijikazi*, 2023 WL

6141372, at *6 (D. Haw. Sept. 20, 2023) (quotation marks and citation omitted);

---

[4]The ALJ may, but is not required to, discuss how they considered the other factors in reaching
their conclusion as to a medical opinion's persuasiveness.  20 C.F.R. § 404.1520c(b)(2).

20 C.F.R. § 404.1520c(b)(2); *accord Woods*, 32 F.4th at 792 ("The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." (quotation marks, brackets, ellipses, and citations omitted)).

### A.   Dr. Reed

Dr. Reed—a consultative examiner—examined Scholes on February 24, 2020 at the request of the Hawai'i Department of Social Services.  AR at 1052. Based on his examination, Dr. Reed recommended that Scholes be limited to two hours apiece of standing/walking and sitting "[w]ith frequent breaks as the claimants [sic] cervical and thoracic spinal stenosis symptoms are exacerbated by prolonged standing or sitting."  *Id.* at 1056.  The ALJ, however, rejected this opinion, explaining that:

> In addition, unpersuasive is the assessment for less than sedentary exertion, by consultative examiner, Dr. G. Reed MD, because this is not consistent with his own exam findings that the claimant ambulated without difficulty, without a limp and without a cane; exhibited full range of motion in all extremities and in the cervical and lumbar spine and 5/5 strength throughout; and sat comfortably without shifting in a chair and was able to stand up from a sitting position and sit up from a supine position without difficulty.

AR at 51.  Scholes now argues that such rejection constituted reversible error as the ALJ "did not properly consider the supportability of Dr. Reed's medical

opinion and failed to consider consistency at all." Dkt. No. 10 at 14.   As such, he seeks remand for proper consideration of both factors.  *Id.* at 17.

### i.   <u>Supportability</u>

First, Scholes contends that the ALJ erred by failing to "properly consider the supportability of Dr. Reed's medical opinion, a consideration which requires the ALJ consider the relevance of the objective medical evidence and supporting explanations presented by the doctor to support his medical opinion."  *Id.* at 15–16. Rather, "the ALJ only considered normal findings made by Dr. Reed" and "failed to explain how the normal findings supported rejection of Dr. Reed's opinion as to Micky's [sic] reduced ability to stand and walk."  *Id.* at 16–17.  Such one-sided analysis was purportedly error.

The Court agrees.  Specifically, although some of the normal findings cited by the ALJ may support his conclusion regarding the persuasiveness of Dr. Reed's opinion, the ALJ erred by focusing *solely* on those findings.  Indeed, there is no indication whatsoever that the ALJ even considered Dr. Reed's several *abnormal* findings, including that Scholes exhibited "[t]enderness to palpitation over the cervical spine and over the paraspinal areas bilaterally from the lower border of the scapula and higher," complained of "hip pain bilaterally on straight leg testing when sitting and right sided hip pain on right straight leg testing when supine," and reported that his "pain is exacerbated by sitting or standing for long periods and

relieved somewhat with change of position." AR at 1055–56. Such cherry-picking of the medical record deprives this Court of the ability to undertake meaningful review of the ALJ's rejection of Dr. Reed's medical opinion.[5] *See Perez v. Saul*, 855 F. App'x 365, 366 (9th Cir. 2021); *Reynoldson v. Comm'r of Soc. Sec.*, 649 F.Supp.3d 1114, 1121 (W.D. Wash. 2023) (holding that "[a]t a minimum, the ALJ needed to explain why [the doctor's] normal findings outweighed the abnormal findings."). As such, it was legal error. *See Robert D. v. Kijikazi*, 2021 WL 5905734, at *8 (S.D. Cal. Dec. 14, 2021) (finding reversible error where "[t]he ALJ was obliged to explicitly address any supportive medical evidence and explanations . . . but he instead ignored it.").

### ii. <u>Consistency</u>

In addition to his arguments regarding supportability, Scholes also contends the ALJ erred because "[u]nequivocally required to articulate his consistency findings, the ALJ did not do so for Dr. Reed's opinion." Dkt. No. 10 at 14. According to Scholes, despite being "required by 20 C.F.R. § 416.920c to consider how consistent Dr. Reed's medical opinion was with evidence from other medical and nonmedical sources . . . the only findings the ALJ considered were from Dr.

---

[5]Moreover, the Commissioner's proffer of additional normal findings does not change the insufficiency of the ALJ's original analysis. *See* Dkt. No. 12 at 3; *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (explaining that the Court is "constrained to review the reasons the ALJ asserts." (quotation marks and citation omitted)).

Reed's own examination report." *Id.* at 15.  As such, notwithstanding the ALJ's use of the term "consistent," Scholes asserts that the ALJ failed to properly "consider the consistency of Dr. Reed's medical opinion at all." *Id.* at 14.

The Court again agrees.  In defining consistency, the Social Security regulations explicitly require the ALJ to consider how "consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from *other* medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2) (emphasis added).  The ALJ, however, explained only that Dr. Reed's medical opinion was "not consistent with *his own exam findings*." AR at 51 (emphasis added).  Such analysis, in other words, goes to supportability, not consistency.[6] *See* 20 C.F.R. § 404.1520c(c)(1) (defining supportability as the "objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s).").  As such, the ALJ failed to meet his basic obligation to articulate his consideration of the consistency between Dr. Reed's medical opinion and the other medical and nonmedical sources in the record writ large.[7] *See Howard*, 2023 WL 6141372, at *7 (explaining that "[u]nder

---

[6] It is perhaps for this reason that the Ninth Circuit suggests "to avoid confusion . . . ALJs should endeavor to use these two terms of art—'consistent' and 'supported'—with precision." *Woods*, 32 F.4th at 793 n.4.

[7] The Commissioner argues that the ALJ did engage in a consistency analysis when he contrasted the assessments from Drs. Wang, Taylor, and Teruya with the objective examination findings that Dr. Reed made, showing that Plaintiff[] retained full motor strength, generally intact sensation, and normal gait despite his intermittent use of a cane at times" and discussed Scholes' various activities.  Dkt. No. 12 at 4.  Such argument, however, mischaracterizes the ALJ's

the revised regulations, district courts often remand matters where an ALJ fails to

adequately engage in the supportability analysis.").

### B.   Drs. Wang, Teruya, and Taylor

The Court next turns to the medical opinions of Drs. Wang, Teruya, and

Taylor.  Having examined Scholes for the purposes of determining his eligibility

for the State of Hawaiʻi's disability program, each of these doctors found him to

have various mobility and other impairments, such that he was "unable to

participate in any activities except treatment or rehabilitation."  AR at 721, 1076,

1081.  Nevertheless, the ALJ rejected these opinions, explaining that:

> Also unpersuasive are the assessments for less than sedentary exertion,
> which were completed by Drs W. Wang, MD, C. Taylor, MD, and Dr.
> B. Teruya, MD from January 2018 through July 2022 for purposes of
> determining the claimant's eligibility for the State of Hawaii DHS
> program, and thus, not under the requirements of the SSA disability
> program.  Their assessments are not supported by their exams, which
> indicate the claimant could ambulate independently, albeit with
> abnormal gait; and not supported by their other findings of no focal
> deficits.  Unpersuasive are these assessments and any others, to the
> extent they suggest a cane or assistive device may be needed, as these
> reflect appraisals of the claimant's subjective reports, without adequate
> support, and without the opportunity to consider other evidence of

---

analysis, which cited only to Dr. Reed's finding that Scholes had "normal ambulation without a cane."  AR at 52.  Moreover, despite the Commissioner's claim that "the recitation of 'magic words' have never been required in the Ninth Circuit so long as the reviewing court can draw specific and legitimate inferences from an ALJ's findings," Dkt. No. 12 at 4 n.1, the Court cannot so easily assume from this singular reference that the ALJ would generally find Dr. Reed's opinion to be inconsistent with all of the other medical and nonmedical sources in the record.  *See Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

record.  Drs. Wang, Taylor, and Teruya appear to have accepted at face value the claimant's presentation with a cane, but this is not consistent with other evidence of record showing the claimant has normal ambulation without a cane and is not consistent with his admitted activities that include taking 1.5-mile walks daily, walking his dog, and carrying out various household tasks.

*Id.* at 51–52 (citations omitted).  Scholes contends that this explanation was deficient, as the ALJ similarly "failed to properly consider the supportability and consistency of Dr. Teruya, Dr. Wang, and Dr. Taylor's medical opinions."  Dkt. No. 10 at 18.  Accordingly, he again seeks remand for proper consideration of these factors.  *Id.* at 21, 25.

### i.  <u>Collective Analysis</u>

As an initial matter, the Court must address Scholes' contention that the ALJ erred by failing to separately assess the consistency and supportability of each doctor's opinion.  *See id.* at 18.  According to Scholes, 20 C.F.R. § 404.1520c(b) requires that the ALJ "articulate how persuasive it finds all of the medical opinions from **each doctor** or other source and explain how it considered the supportability and consistency factors in reaching these findings."  *Id.* (ellipses, brackets, quotation marks, and citations omitted).  The ALJ purportedly violated this mandate by jointly considering Drs. Wang, Teruya, and Taylor's medical opinions in a singular analysis.  *See* AR at 51–52.  Scholes contends that the ALJ's explanation was fundamentally erroneous and requires remand.  *See* Dkt. No. 10 at 18.

Scholes misreads the regulations. Although Section 404.1520c(b) may require the ALJ to articulate the persuasiveness, supportability, and consistency of *each* medical opinion, there is nothing requiring the ALJ to do so *individually*. *See generally* 20 C.F.R. § 404.1520c(b). Rather, the ALJ may undertake such analysis collectively provided that the supportability and consistency of each medical opinion is ultimately addressed. *Cf. Burrell v. Kijakazi*, 2024 WL 836813, at *14–15 (D. Haw. Feb. 28, 2024) (holding that the ALJ's general finding that "'the opinions of [Plaintiff's] doctors' were unpersuasive" did not satisfy their obligation to articulate a supportability and consistency analysis for each medical source). To mandate otherwise would elevate form over substance—something that neither the regulations nor this Court require the ALJ to do. Accordingly, the ALJ's decision to jointly analyze Drs. Wang, Teruya, and Taylor's medical opinions does not, by itself, provide reason for remand.

### ii.   <u>Supportability</u>

Undeterred, Scholes next argues that "[e]ven if considering these opinions together was not error, the ALJ's faulty supportability analysis shows the frailty of attempting such a methodology." Dkt. No. 10 at 18. Specifically, according to Scholes, by addressing Drs. Wang, Teruya, and Taylor's medical opinions jointly, "[t]he supportability analysis was absent for Dr. Teruya and Dr. Taylor's opinions and improperly conducted for Dr. Wang's opinion." *Id.*

First, Scholes is mistaken when he claims that "there is no supportability analysis of Dr. Teruya and Dr. Taylor's opinions" because "[o]nly Dr. Wang's record was cited specifically in the ALJ's analysis." Dkt. No. 10 at 19–21. Notably, in addressing supportability, the ALJ stated:

> Also unpersuasive are the assessments for less than sedentary exertion, which were completed by Drs W. Wang, MD, C. Taylor, MD, and Dr. B. Teruya, MD . . . Their assessments are not supported by their exams, which indicate the claimant could ambulate independently, albeit with abnormal gait [9F, 21F]; and not supported by their other findings of no focal deficits. [9F/4]

AR at 51.  These citations to Exhibits 9F and 21F in the original administrative record include physical examination reports from all three doctors.  *See, e.g.*, *id.* at 715–17 (Dr. Wang), 719–21 (Dr. Taylor), 1079–81 (Dr. Teruya).  As such, Scholes is not correct in asserting that the ALJ's supportability analysis referenced only Dr. Wang's record.

The presence of certain citations alone, of course, does not mean that the ALJ's supportability analysis was sufficient to determine whether the ALJ's rejection of Drs. Wang, Teruya, and Taylor's medical opinions was supported by substantial evidence.  In fact, as before, the ALJ's analysis focuses almost exclusively on the doctors' *normal* findings while largely ignoring their various *abnormal* results.  For example, although the ALJ cited to the doctors' findings that Scholes "could ambulate independently, albeit with abnormal gait [9F, 21F]" and had "no focal deficits. [9F/4]," *id.* at 51, he failed to mention, let alone discuss,

the seizures, decreased sensation to hands, poor balance, upper extremity pain and weakness, tingling/buzzing/vibrating sensations, and shaking also documented in those reports. *Id.* at 710–711, 715–17, 719–20, 1074–75, 1079–80. As discussed above, such cherry-picking of the medical record prevents this Court from undertaking meaningful review of whether the ALJ's rejection of Drs. Wang, Teruya, and Taylor's medical opinions was supported by substantial evidence. *See supra* 12–13. Accordingly, it again constituted legal error.[8]

### iii.   Consistency

Finally, Scholes asserts that the ALJ erred by failing to undertake a proper consistency analysis of Drs. Wang, Teruya, and Taylor's medical opinions. Dkt. No. 10 at 21–25. In addressing consistency, the ALJ explained that:

> Unpersuasive are these assessments and any others, to the extent that they suggest a cane or assistive device may be needed, as these reflect appraisals of the claimant's subjective reports, without adequate support and without the opportunity to consider other evidence of record. Drs. Wang, Taylor and Teruya appear to have accepted at face value the claimant's presentation with a cane, but this is not consistent with other evidence of record showing the claimant has normal ambulation without a cane [18F] and is not consistent with his admitted activities that include taking 1.5-mile walks daily, walking the dog and carrying out various household tasks.

AR at 51–52. Scholes claims that such analysis was improper, as the ALJ: (1)

---

[8]As with Dr. Reed, the Commissioner's proffer of additional normal findings does not cure the deficiency of the ALJ's original analysis with respect to Drs. Wang, Teruya, and Taylor. *See supra* n.6; *Burrell*, 775 F.3d at 1138.

ignored the doctors' other medical findings—apart from Scholes' need for a cane—which might render him disabled; (2) falsely characterized the doctors as relying solely on Scholes' self-report of his need for a cane; (3) improperly based his reasoning on a single conflicting medical record; and (4) failed to explain how Scholes' activities were actually inconsistent with his need for a cane. *See* Dkt. No. 10 at 22–25.  The Court addresses each argument in turn.

First, the Court agrees that the ALJ erred by failing to undertake a consistency analysis as to Drs. Wang, Teruya, and Taylor's non-cane-related findings.  The Social Security regulations explain that in reaching a decision, the ALJ must "articulate in [his] determination or decision how persuasive [he] find[s] *all* of the medical opinions . . . in [the claimant's] case record" and "how [he] considered the . . . consistency factors for a medical source's medical opinions." 20 C.F.R. §§ 404.1520c(b), (b)(2) (emphasis added).  Here, however, in conducting his consistency analysis, the ALJ focused *exclusively* on the doctors' opinions regarding Scholes' need for a cane while ignoring their findings as to Scholes' various other potentially disabling impairments.  *See, e.g.*, AR at 719–21, 1074–81 (documenting, *inter alia*, tingling/buzzing/vibrating sensations, loss of fine motor skills, weakness with lifting, shaking, diffuse body pain, and fatigue that limited Scholes' ability to stand or walk more than two hours, carry more than ten pounds, or feel with his hands).  Such omission was error.  *See Lewis v.*

*Comm'r of Soc. Sec. Admin.*, 625 F. Supp. 3d 942, 946–48 (D. Ariz. 2022) (finding error where the ALJ only addressed part of the medical provider's opinion and ignored "important nuanced caveats" to other findings).

Second, the Court also agrees that the ALJ failed to properly evaluate the consistency of Drs. Wang, Teruya, and Taylor's opinions as to Scholes' need for a cane. As an initial matter, contrary to the ALJ's suggestion that the doctors "accepted at face value the claimant's presentation with a cane," AR at 52, the record indicates that each independently examined Scholes, finding deficits which would support the need for such an assistive device. *See, e.g.*, *id.* at 711 (diagnosing gait instability and falls), 720 (reporting use of cane to address left side weakness), 1075 (indicating slow, antalgic gait), 1080 (reporting mobility as slow and unsteady even with a cane). Accordingly, the ALJ's erroneous perception that the doctors relied exclusively on Scholes' facial presentation with a cane does not provide a basis to reject their opinions.

Third, to the extent that the ALJ found Drs. Wang, Teruya, and Taylor's opinions that Scholes required the use of a cane to conflict with Dr. Reed's finding that Scholes had normal ambulation without a cane, the Court agrees that Dr. Reed's solitary finding does not, without additional explanation, constitute a legitimate reason to reject the other doctors' opinions on consistency grounds. Notably, the fact Scholes may have been able to move without difficulty, gait

instability, or support on one day says little about his ability to do so on other days or over time. *See Steele v. Saul*, 520 F. Supp. 3d 1198, 1210 (D. Alaska 2021) (finding that the ALJ erred by rejecting a medical opinion as inconsistent with the record based on an "isolated report in a treatment note . . . [which] says very little about how plaintiff would be able to function in a competitive work environment, which is what [the doctor] was evaluating."). Indeed, Dr. Reed's findings appear to be an outlier on this point. *See, e.g.*, AR at 710–21 (observing discomfort and use of a cane), 1074–81 (noting slow, unsteady, and antalgic gait and use of a cane); *see also Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (explaining that "it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). As such, the ALJ erred in rejecting the other doctors' medical opinions as inconsistent on this singular basis.[9]

Fourth and finally, the Court agrees that the ALJ erred by failing to explain how Scholes' activities were inconsistent with Drs. Wang, Teruya, and Taylor's opinions as to his need for a cane. Of course, "[a] conflict between a [medical] opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020).

---

[9]It is also notable that the Commissioner does not address any of these first three consistency arguments in his Answering Brief. *See* Dkt. No. 12 at 4–5; Dkt. No. 13 at 8–10.

Nevertheless, in doing so, the ALJ is not absolved of his obligation to *explain* the basis for such conflict and how any given activity undermines the persuasiveness of the medical provider's opinion.  *See* 20 C.F.R. § 404.1520c(b)(2); *see also Treichler*, 775 F.3d at 1103 (instructing that "[a]lthough the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").  Here, the ALJ stated only that Drs. Wang, Teruya, and Taylor's assessments that Scholes needed a cane were "not consistent with [Scholes'] admitted activities that include taking 1.5-mile walks daily, walking his dog, and carrying out various household tasks."  AR at 52.  Such conclusory recitation is far from sufficient to meet the ALJ's obligations under both the Social Security regulations and the Ninth Circuit's case law to articulate his reasoning.  It was, therefore, error.[10]

## III.   Harmless Error

In sum, the ALJ erred by failing to properly consider the supportability and consistency of Drs. Reed, Wang, Teruya, and Taylor's medical opinions.  This error was not harmless as it resulted in a "residual functional capacity

---

[10]The Commissioner argues that given the deferential standard of review, the Court need only find that there is a "mere scintilla" of evidence supporting the ALJ's assessment that such activities were inconsistent with Scholes' use of a cane.  Dkt. No. 12 at 4–5.  Though this may be true, the Commissioner ignores the true problem—that the ALJ failed to *explain* why he found such activities to be inconsistent with the use of a cane in the first place.  As such, his argument is unavailing.

determination [that] was incomplete, flawed, and not supported by substantial evidence in the record." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012); *see also Robbins v. Soc. Sec. Admin*, 466 F.3d 880, 885 (9th Cir. 2006) (explaining that an error is only harmless "when it was clear from the record that an ALJ's error was inconsequential to the ultimate nondisability determination." (quotation marks and citation omitted)); *Chung v. O'Malley*, 2024 WL 3224039, at *7 (D. Haw. June 28, 2024) (collecting cases).  Accordingly, the ALJ's determination must be VACATED and this case REMANDED for proper consideration of the medical opinions.

## **CONCLUSION**

For the reasons set forth herein, the Commissioner of Social Security's decision denying Plaintiff Mickey Scholes' application for supplemental social security income is VACATED and REMANDED for further proceedings consistent with this Order.

The Clerk of Court is instructed to CLOSE this case.

IT IS SO ORDERED.

DATED: July 16, 2024 at Honolulu, Hawai'i.

Derrick K. Watson
Chief United States District Judge